IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| Carrie Weseman,<br><br>      Plaintiff,<br><br>      v.<br><br>Alyeska Pipeline Service Company,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 3AN-19- 11701 CI |

## COMPLAINT

COMES NOW, Carrie Weseman, the plaintiff above named, by and through her attorney, Isaac Derek Zorea, and complains as follows:

### I. JURISDICTION

1.1.    At all relevant times, plaintiff, Carrie Weseman, resided within the Third Judicial District, State of Alaska.

1.2.    At all relevant times, defendant, Alyeska Pipeline Service Company, has maintained significant business connections within the Third Judicial District, State of Alaska.

1.3.    Venue properly rests within the Third Judicial District, State of Alaska.

### II. FACTS

2.1.    Mrs. Weseman began her employment with Defendant on June 6, 1994, when she was hired as a Power Vapor Technician I, In Valdez, Alaska.

2.2.    Between 1994 and 2003, Mrs. Weseman progressed in her position advancing to Technician II and III.

ISAAC DEREK ZOREA
ATTORNEY & COUNSELOR AT LAW
P.O. BOX 210434
ANCHORAGE, AK 99521
PHONE (907) 830-1385  FAX: (907) 677-3779

Complaint: *Weseman v. Alyeska Pipeline Service Company*                    — *1 of 8* —

2.3.     On July 2003, Mrs. Weseman was promoted to the position of Technician IV, a position she remained at until leaving Alyeska in September of 2003.

2.4.     In July 2007, Mrs. Weseman returned to work with Alyeska, where she returned to her previous position as a Technician IV.

2.5.     On September 2009, Mrs. Weseman had progressed in her job to the highest level technician, a Technician VI, which was a position she remained at until her termination in June 2018.

2.6.     In her position with Defendant, Mrs. Weseman worked as a field employee at the Power Vapor facility in Valdez, Alaska, working a rotational shift of two weeks on shift and two weeks off shift.

2.7.     At all times relevant to this case, Mrs. Weseman provided exceptional services for her employer, receiving good evaluations, including for the years 2015 and 2017.

2.8.     During 2017, Mrs. Weseman identified OSHA compliance issues at her employment site, the Vapor Power Facility in Valdez, Alaska.  Related to these obeservations, Mrs. Weseman notified OSHA of the violations she observed.

2.9.     In retaliation for complaining of OSHA violations, Mrs. Weseman's new supervisor Megan Woods began to treat her in a disparate manner to her co-workers, even submitting a poor performance evaluation for part of her work in 2017.

2.10.    In December 2017, Shortly after Mrs. Weseman had voiced OSHA complaints. And engaged in whistleblowing conduct, her supervisor Ms. Woods subjected her to heightened scrutiny in Mrs. Weseman's use of medical leave benefits.

2.11.    In an effort at retaliation against Mrs. Weseman for her whistle blowing activities, and as discriminatory conduct because of her age, and perceived disabilities, Alyeska issued to her a Medical Leave Management Memo, which singled her out concerning medical leave usage.

Complaint: *Weseman v. Alyeska Pipeline Service Company*                          — 2 of 8 —

2.12.   In addition to issuing a discriminatory medical leave management memo, on or about May 2018 until her termination, Alyeska began to require Mrs. Weseman to provide intrusive and unnecessary disclosures of her medical conditions.

2.13.   During 2018, in an increasing effort to harass Mrs. Weseman, Alyeska required that she provide more than just a doctor's note, when she needed medical treatment during her work shift period.  In fact, Alyeska had its medical staff call Mrs. Weseman's personal physicians to confirm if medical documents sent were accurate.

2.14.   The harassment Alyeska conducted toward Mrs. Weseman concerning her medical leave requests occurred despite the fact that she had an excess of 1,600 hours of sick leave available to her.

2.15.   Realizing that she had been experincing medical problems during 2018, and that Alyeska, was attempting to interfere with her ability to seek treatment, Mrs. Weseman filled out and requested protection under the Family Medical Leave Act.

2.16.   On May 30, 2018, Mrs. Weseman had her treating physician's staff fax FMLA information to Alyeska, informing the company of her need for FMLA protection due to medical conditions she was experiencing.

2.17.   Due to medical necessities, Mrs. Weseman needed to undergo an emergency procedure, and the first available opportunity for the procedure was on June 12, 2018, a time when she had been scheduled to be on shift for work.  In anticipation of this leave, Mrs. Weseman informed her supervisor Ms. Woods.

2.18.   After undergoing the medical procedure on June 12-13, 2018, Ms. Woods received an email from her supervisor Ms. Woods, informing her that because she had undertaken a medical procedure during her work shift (even though she had 1,600 sick leave days), she had acted in an insubordinate manner, and would be subject to a disciplinary hearing board – which would likely result in her termination.

2.19.   Mrs. Weseman was released from work on June 21, 2018, due to a death in the family, but due to the stress caused by the continual harassment imposed on her by Ms. Woods, she stated that she would resign, if the harassment would not otherwise stop.

2.20.   On June 25, 2018, the Disciplinary Review Board met concerning Mrs. Weseman, determining that it would terminate her employment.  It issued a finding that Mrs. Weseman was ineligble for rehire at the Vapor Power Facility, but that she could reapply to other Trans-Alaska Pipeline Service positions.

2.21.   When Mrs. Weseman received her final pay check, her paycheck noted that her last day of work was on June 26, 2018.

2.22.   On June 26, 2018, Mrs. Weseman received a letter from Alyeska informing her that it had accepted her resignation, but after the Disciplinary Review Board had met, it was determined that she was ineligible for rehire at the Vapor Power Facility.

2.23.   In a timely fashion, Ms. Weseman filed a complaint with the Equal Employment Opportunity Commission, eventually receiving her right to sue letter.

2.24.   This lawsuit is being filed within the time frame for filing a claim under the Right to Sue letter she received for her Age and Disability discrimination claims.

## CAUSES OF ACTION

### A.   VIOLATION OF THE TORT OF WRONGFUL DISCHARGE

3.1.   Carrie Weseman incorporates all the facts and allegations within the paragraphs listed above, 2.1 through 2.24.

3.2.   Plaintiff Carrie Weseman affirms and attests that during the relevant time of her employment with Defendant, she was satisfactorily performing the key elements of her job.

Complaint: *Weseman v. Alyeska Pipeline Service Company*                    — 4 of 8 —

3.3.    Plaintiff Carrie Weseman further attests and affirms that during the summer of 2017, she identified numerous health and safety violations of both Federal and Alaska Occupational Safety and Health Adminstration regulations, bring these issues to the attention of her direct supervisor.

3.4.    Plaintiff Carrie Weseman affirms and states that she had a public duty to identify the safety and health violations that existed within Defendant's business, and that she took appropriate steps to correct these violations, while other managers did nothing about these violations.

3.5.    Despite engaging in protected activity by reporting and identifying safety and health violations, Alyeska considered Mrs. Weseman's conduct to indicate a lack of "team unity," providing her a bad evaluation for 2017, and retaliated against her for making her reports.

3.6.    Plaintiff Carrie Weseman affirms and attests that her supervisor retaliated against her because of the protected activity that she engaged in, and made the decision to alter her ability to use company's sick leave benefits.

3.7.    At the time of her termination, Mrs. Weseman was properly performing her job duties, but she was suffering medical problems and her supervisor, Ms. Woods, made affirmative steps to harass and intimidate her because she used her medical leave benefits – arguing that her use of medical leave while on shift was insubordination, creating a pretext for terminating her employment.

3.8.    Mrs. Weseman affirms and attest that defendant's conduct, as alleged in paragraph 3.1 through 3.7, did constitute a willful and/or reckless violation of the duty that it owed to her, and violated its own internal policies, public policy, and inconsistently applied its employee handbook policies, and that such conduct was outrageous, reckless, and/or negligent, thereby violating the Covenant of Good Faith and Fair Dealing, and constituted the tort of wrongful discharge.

Complaint: *Weseman v. Alyeska Pipeline Service Company*                    — 5 of 8 —

3.9.    As a remedy for the conduct perpetrated by Defendant Alyeska, plaintiff Carrie Weseman requests all available remedies, including punitive damages, lost wages, lost 401K investment opportunities, pension, future loss wages, and other remedies available under Alaska law related to the tort of wrongful discharge and the Covenant of Good Faith and Fair Dealing.

**B.    DISPARATE TREATMENT ON THE BASIS OF AGE IN VIOLATION OF 29 U.S.C. § 623.**

3.10.    Carrie Weseman incorporates all the facts and allegations within the paragraphs listed above, 2.1 through 2.24, and alleges that defendant, Alyeska, violated the Age Discrimination in Employment Act.

3.11.    Carrie Weseman alleges that at all times relevant to this lawsuit she was over forty years of age, and was performing her job duties to the expectation of her employers, receiving no significant progressive discipline or verbal counseling.

3.12.    Carrie Weseman alleges that her supervisor, Megan Woods, treated her is a disparate manner based on her age during her employment when she placed excessive restrictions on her use of medical leave/sick leave benefits.

3.13.    Plaintiff Carrie Weseman alleges that despite satisfactorily performing all her employer's reasonable expectations, she was subject to a disciplinary review and subesequently terminated from her employment, for conduct that persons not within her age category would have been disciplined for doing in like manner.

3.14.    For Alyeska's violations of the Age Discrimination in Employment Act, Plaintiff seeks all damages available under law, specifically as outlined in 29 U.S.C. § 216(b), including back pay, future pay, actual attorney fees and prejudgment interest, and liquidated damages.

Complaint: *Weseman v. Alyeska Pipeline Service Company*                    — 6 of 8 —

## C. DISPARATE TREATMENT AND RETALIATION ON THE BASIS OF DISABILITY, IN VIOLATION OF THE AMERICANS WITH DISABILITY ACT, AS AMENDED.

3.15.   Plaintiff, Carrie Weseman, reaffirms the facts and allegations within paragraphs 2.1 through 2.24 above, and alleges that by such conduct defendant, Alyeska, violated the protections guaranteed within the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq..

3.16.   Plaintiff, Carrie Weseman, alleges, and affirms, that at all times relevant to this lawsuit, she was a "qualified individual," as this terms is defined in 42 U.S.C. § 12111(8), as documented by her employment records, and evaluations.

3.17.   Plaintiff, Carrie Weseman, alleges, and affirms, that her employer, Alyeska, percieved her to have a disability, and based on that perception discriminated against her on the basis of her disability in regard to implementation of its medical and sick leave benefits, holding Mrs. Weseman to standards not universally applied to other, comparable, employees.

3.18.   Plaintiff, Carrie Weseman, alleges that by treating her differently than other similarly situated employees who did not suffer from a physical disability, Defendant made her work environment intollerable.

3.19.   As remedy for the conduct allegedly perpetrated by Alyeska, plaintiff Carrie Weseman, requests all available remedies under 42 U.S.C. § 1981(a), and the Americans with Disabilities Act, including back pay, future pay, compensatory damages, punitive damages, and attorney fees, under 42 U.S.C. § 1988.

/

/

/

/

/

Complaint: *Weseman v. Alyeska Pipeline Service Company*                — 7 of 8 —

## PRAYER OF RELIEF

WHEREFORE, Plaintiff, Carrie Weseman, requests judgment against defendant Alyeska Pipeline Services Company, as follows:

1.      Full and complete payment of all damages permitted that related to plaintiff's claim against defendant, alleging a violation of the tort of wrongful discharge, and the Covenant of Good Faith and Fair Dealing, including lost wages, future wages, punitive damages, attorney fees, prejudgment interest, and other permitted remedies, within the jurisdictional limit of this court, with the exact amount to be proven at trial.

2.      Full and complete payment of all damages permitted that related to plaintiff's claim against defendant, alleging a violation Age Discrimination in Employment Act, specifically as outlined in 29 U.S.C. § 216(b), including back pay, future pay, actual attorney fees and prejudgment interest, and liquidated damages, within the jurisdictional limit of this court, with the exact amount to be proven at trial.

3.      Full and complete payment of all damages permitted that related to plaintiff's claim against defendant, including all available remedies under 42 U.S.C. § 1981(a), and the Americans with Disabilities Act, including back pay, future pay, compensatory damages, punitive damages, and attorney fees, under 42 U.S.C. § 1988

4.      Plaintiff Carrie Weseman further seeks such other relief as the court may deem just and proper based on the egregious nature of defendant's conduct.

Dated: December 16, 2019

Isaac D. Zorea
ABA No.  0011090
Counsel for Carrie Weseman

Complaint: *Weseman v. Alyeska Pipeline Service Company*                     *— 8 of 8 —*